UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
TRUSTEES OF THE BUILDING TRADES EDUCATIONAL BENEFIT FUND, THE BUILDING TRADES ANNUITY BENEFIT FUND, BUILDING TRADES WELFARE BENEFIT FUND and BUILDING TRADES PENSION FUND,

                    Plaintiffs,

  -against-

PEGASUS ELECTRIC, INC. a/k/a PEGASUS ELECTRICAL CORP.,

                    Defendant.
---------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
17-CV-3450 (JFB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court, on referral from the Honorable Joseph F. Bianco for Report and Recommendation, is the damages component of the motion for default judgment filed by Plaintiffs Trustees of the Building Trades Educational Benefit Fund ("BTEBF"), The Building Trades Annuity Benefit Fund ("BTABF"), Building Trades Welfare Benefit Fund ("BTWBF") and Building Trades Pension Fund ("BTPF") ("Plaintiffs" or the "Trustees") (BTEBF, BTABF, BTWBF and BTPF collectively, the "Funds"). *See* Docket Entries ("DEs") [9]-[13]. By way of Complaint filed on June 8, 2017, Plaintiffs commenced this action against Defendant Pegasus Electric, Inc. a/k/a Pegasus Electrical Corp. ("Defendant" or the "Employer") alleging violations of Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145. *See generally* Complaint

1

("Compl."), DE [1]. On May 23, 2018, Judge Bianco entered an Order granting Plaintiffs' motion for default judgment against Defendant and referring the matter to this Court for Report and Recommendation addressing the appropriate remedies. *See* DE [16]. For the reasons set forth herein, it is respectfully recommended that Plaintiffs be awarded damages in the total amount of $98,749.89, plus attorneys' fees and costs.

## I. BACKGROUND

The Trustees are the fiduciaries of jointly administered multi-employer labor management trust funds as defined by Sections 3(21)(A) and 502(a)(5) of ERISA, 29 U.S.C. §§ 1002(21)(A) and 1132(a)(3). *See* Compl. ¶ 5. The Funds are "employee benefit plans" within the meaning of Sections 3(1), 3(2), 3(3), and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(3) and 1132(d)(1), and "multiemployer plans" as defined by Sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37) and 1145. *See id.* The "Union" and various employers established and continue to maintain the Funds pursuant to the terms of "the Collective Bargaining Agreements and Trust Indentures" and in accordance with Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5).[1] *See id.* Plaintiffs are trustees of the Funds and the "plan sponsor" within

---

[1] Plaintiffs allege in paragraph 5 of the Complaint that the "Union," which is not a defined term, entered "Collective Bargaining Agreements" with various employers, yet two labor unions—Local 363, United Electrical Workers of America, IUJAT ("Local 363") for electricians and Local 713 International Brotherhood of Unions ("Local 713") for clerical employees—are identified in paragraph 6 as parties to a "Collective Bargaining Agreement," abbreviated "C.B.A.," with the "Employer." *See* Compl. ¶¶ 5, 6. In subsequent paragraphs, the Complaint at times refers to the applicable "C.B.A.s," *see, e.g., id.* ¶ 10, and at other times cites the "C.B.A.," *see, e.g., id.* ¶ 13. Notably though, in their first cause of action, Plaintiffs allege that "[t]he Employer executed C.B.A.s with the 363 Union for the electricians and with the 713 Union for the clerical employees and/or was and still is a party to a C.B.A. with the Unions or by virtue of membership in an Association." *See id.* ¶ 10. The sole collective bargaining agreement (the "CBA") submitted to the Court is between Local 363 and the Building

2

the meaning of Section 3(16)(B)(iii) of ERISA, 29 U.S.C. §§ 1002(16)(B)(iii). *See id.* The Trustees, as fiduciaries of the Funds, are authorized to bring suit as independent legal entities under Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1), and are obligated to commence actions to enforce provisions of various agreements that protect employee benefit rights. *See id.* ¶ 6.

According to the Complaint, Defendant, at all relevant times, was and is an "employer" within the meaning of Section 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and an "employer" in an industry affecting commerce under Section 301 of the LMRA, 29 U.S.C. § 185. The Employer is in the business of electrical contracting. *See* Affidavit of Albert Alimenia ("Alimenia Affidavit" or "Alimenia Aff."), DE [10], ¶ 2.

Pursuant to the terms of the CBA, Defendant is obligated to periodically remit monetary contributions to the Funds, which in turn provide fringe benefits to eligible individuals. *See* Compl. ¶¶ 6, 10; CBA. Specifically, the CBA provides that Defendant must submit contributions to the Funds on behalf of its covered employees before the sixtieth day of the month following the end of each payroll period. *See*

---

Industry Electrical Contractors Association (the "Association"), an exclusive bargaining representative of various employers. *See* DE [10-1]. Yet, a document executed by Local 363 and the Association on October 1, 2012 entitled "Membership Application of Designation of Bargaining Representative" indicates that Defendant joined the Association on October 1, 2012. *See* DE [10-2]. On the same date, Local 363 and the Employer entered into an Assumption Agreement into which all the terms of the CBA were incorporated by reference. *See id.* Thus, although Defendant is not explicitly identified in the CBA as a party, the CBA's terms govern the relationship between the Employer and Local 363. It is unclear from the record, however, whether Local 713 executed a separate collective bargaining agreement with either the Association or the Employer. Nevertheless, considering Plaintiffs' allegation that a collective bargaining agreement governed Defendant's relationship with both Local 363 and Local 713; Judge Bianco's Order dated May 23, 2018, granting default judgment on the issue of liability; and the audit reports submitted by Plaintiffs, the Court is satisfied for purposes of the instant motion that the Employer was contractually required to remit contributions to the Funds for work performed by its clerical employees.

3

Alimenia Aff. ¶ 3 (citing CBA at p. 17). Further, according to the Complaint, the "C.B.A.s, Collection Policies and/or Trust Indenture"[2] require the Employer to submit contributions reports setting forth the hours that each of its employees worked and the amount of contributions due for all work performed by its employees covered by the CBA. *See* Compl. ¶ 11.[3] Any employer that fails to remit the required contributions in a timely manner must also pay to the Funds: (i) interest at the prime rate set forth in the Federal Reserve Statistical Release, plus 2%; (ii) liquidated damages at a rate of 20% of the total delinquency; and (iii) all costs of collecting the payment due, including attorneys' fees and disbursements. *See* Alimenia Aff. ¶ 5 (citing CBA at p. 17).

An audit performed for the Funds revealed that the Employer failed to pay contributions due on behalf of covered employees for the period of January 1, 2014 through March 31, 2016 in the amount of $77,914.83. *See* Compl. ¶ 13; Alimenia Aff. ¶ 4; *see also* DE [10-3]. The audit results also indicated a delinquency of $3,054.00 in interest and $5,579.43 in accounting fees. *See* Alimenia Aff. ¶ 4; *see also* DE [10-3].

In light of Defendant's continued failure to remit the amounts due to the Funds, the Trustees commenced this action on June 8, 2017. *See* DE [1]. After Defendant failed to answer or otherwise respond to the Complaint, the Clerk of the Court entered a Certificate of Default, at Plaintiffs' request, on October 26, 2017. *See*

---

[2] The Complaint does not define the terms "Collection Policies" or "Trust Indenture," nor have Plaintiffs' submitted any such documents to the Court.

[3] Contrary to Plaintiffs' assertion in the Alimenia Affidavit, *see* ¶ 3, the CBA provides that the Employer must file remittance reports to the Funds on or before the sixtieth, not the twentieth, "day of the month next following the month in which the work for which the contribution is owed is performed." *See* CBA at p. 18.

4

DE [8]. On March 27, 2018, the Trustees filed a motion for default judgment against the Employer. *See* DEs [9]-[13]. By Order dated April 12, 2018, Judge Bianco directed Defendant to respond in writing within twenty-one days as to why default judgment should not be entered. *See* DE [14]. Having received no response from the Employer, Judge Bianco entered an Order granting Plaintiffs' motion for default judgment on May 23, 2018. *See* [16]. In the same Order, Judge Bianco referred the matter to this Court for Report and Recommendation to address the issue of damages and other relief sought by the Trustees. *See id.*

## II.   DISCUSSION

Because Judge Bianco has already granted default judgment with respect to liability, this Court need only evaluate the Trustees' request for damages. "A default . . . effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct." *Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, 13-cv-1873, 2014 WL 1399417, at *4 (E.D.N.Y. Feb. 28, 2014) (citation and internal quotation marks omitted). To establish damages, the movant must only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). Under ERISA, in the context of a default judgment, once liability has been established, a court must ascertain damages with "reasonable certainty." *Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 96 (E.D.N.Y. 2015) (quoting *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). An evidentiary hearing is not required as long as there is a basis for the

5

damages awarded. *See Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted).

Section 502 of ERISA provides the following with respect to damages in actions to recover unpaid contributions:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [S]ection 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621].

29 U.S.C. § 1132(g)(2). The CBA likewise requires Defendant to pay interest on unpaid contributions, liquidated damages, attorneys' fees, and costs. *See* CBA at p. 17.

Here, Plaintiffs request an award of $110,326.69 in damages, comprised of: (i) $77,914.83 in unpaid contributions; (ii) $5,064.46 in "interest"; (iii) $3,054.00 in

6

"audit interest"; (iv) $15,582.96 in liquidated damages; (v) $2,600.00 in attorneys' fees; (vi) a $5,579.43 accounting fee; (vii) a $400.00 filing fee; and (viii) a $131.00 process server fee.  *See* Statement of Damages, DE [13]; Attorney's Affirmation in Support of Plaintiffs' Motion for Default Judgment, DE [11], ¶ 7.  For the reasons that follow, the Court respectfully recommends that the Trustees be awarded a total of $98,749.89 in damages, plus attorneys' fees and costs.

### A. Unpaid Contributions

Plaintiffs seek to recover $77,914.83 in unpaid contributions for the period of January 1, 2014 through March 31, 2016.  *See* Alimenia Aff. ¶ 4.  In support of their application, Plaintiffs rely on the Alimenia Affidavit and two audit reports prepared for the Funds by COSTAROTHBORT CPAS LLC ("CR").  *See* DE [10-3].  The first report, dated July 27, 2016, addresses contributions owed to the Funds based on work performed by electrical workers covered by the CBA, while the second report, dated December 7, 2016, addresses only those contributions allegedly owed for work performed by Defendant's clerical employees.  *See id.*  In conducting its audit, CR compared the Employer's payroll records from the period in question with Defendant's quarterly tax returns and remittance reports, reviewed Defendant's payroll records and contribution reports "to determine the accuracy of contributions made in accordance with the job classifications and rates of pay listed," and "compared the employees in non-union and union contract categories to employees for whom contributions were made to determine if there were employees for whom contributions were excluded."  *See id.*  Based on its review of those materials, CR calculated unpaid contributions of $32,964.83 for electrical workers and $44,950.00

7

for clerical employees during the period of January 1, 2014 through March 31, 2016, for a total of $77,914.83. *See id.* Accordingly, having reviewed the detailed audit reports prepared by CR, as well as the additional supporting documentation submitted in connection with the instant motion, the Court respectfully recommends that Plaintiffs be awarded a total of $77,914.83 in unpaid contributions. *See Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. High Performance Floors, Inc.*, No. 15-cv-2253, 2018 WL 334439, at *4 (E.D.N.Y. Jan. 8, 2018) ("An auditor's report is commonly accepted to prove a defendant's delinquency.").

### B. Interest

#### 1. Interest on Unpaid Contributions

Plaintiffs seek interest pursuant to Section 502 of ERISA and the terms of the CBA. *See* 29 U.S.C. § 1132(g)(2)(B). "The amount of interest due for unpaid contributions must be 'determined by using the rate provided under the plan.'" *Trustees of Steamfitters' Local Union No. 638 Welfare Fund v. Nexus Mech., Inc.*, No. 08-cv-3214, 2014 WL 1338377, at *6 (E.D.N.Y. Apr. 2, 2014) (quoting 29 U.S.C. § 1132(g)(2)(B)). Under the CBA, the Funds are entitled to interest on the unpaid contributions "at the prime rate as stated in the Federal Reserve Statistical Release on the date contributions are due plus 2%." CBA at p. 17; *see* Alimenia Aff. ¶ 5. In accordance with this provision, Plaintiffs seek interest on the total unpaid contribution amounts found to be due and owing as a result of the audit conducted by CR, $77,914.83. *See* Statement of Damages. The Trustees, without explanation,

8

select a "prime rate" of 4.5%, to which they add an additional 2% pursuant to the terms of the CBA, and proceed to calculate $5,064.46 in interest due.

Plaintiffs' interest calculations are deficient in several respects. Initially, the Trustees have submitted no documentation indicating either how they arrived at the 4.5% "prime rate" or what the actual prime rates were at the time interest was calculated. In addition, as noted above, Plaintiffs have neither submitted nor identified a collective bargaining agreement or other document applicable to the Employer's clerical workers. Although the Court has nevertheless determined that an agreement requiring Defendant to remit contributions on behalf of its clerical employees was in place, the Trustees have identified no basis to apply the interest rate set forth in the CBA to the deficient contributions attributable to work performed by those employees. As a result, the rate prescribed under 26 U.S.C. § 6621 should be applied to calculate interest accrued on those amounts. *See* 29 U.S.C. § 1132(g)(2); *Bd. of Trustees of United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 Annuity, Pension, Summer Benefit, Winter Benefit, & Welfare Funds v. J. Murphy Roofing & Sheet Metal, Inc.*, No. 13-cv-3807, 2015 WL 5536598, at *6 (E.D.N.Y. July 6, 2015) ("Without the rate provided in the CBA, the Federal Short Term rate plus three percentage points applies." (citing 26 U.S.C. § 6621(a)(2)), *report and recommendation adopted sub nom.*, 2015 WL 5539006 (E.D.N.Y. Sept. 18, 2015).

Having no information regarding how Plaintiffs arrived at the "prime rate" of 4.5%, or what interest rate is properly applied to unpaid contributions for work performed by Defendant's clerical workers, the Court deems it appropriate to use the

9

rate established under 26 U.S.C. § 6621 to calculate interest on all contributions owed. During the period at issue, January 1, 2014 through March 31, 2016, the Federal short-term rate remained at 3%. *See* https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/correction-programs/vfcp/table-of-underpayment-rates. Adding an additional 3% to that rate as provided by the statute yields an interest rate of 6% *per annum*. Next, the Court calculates a *per diem* rate of $12.81 by multiplying $77,914.83 in unpaid contributions by the 6% interest rate and dividing that product by 365. Further, given that Plaintiffs have not identified an accrual date, the Court will "select a single accrual date from which to begin the calculation of interest, even though the delinquent payments at issue were due at various times." *See Trustees of Operative Plasters & Cement Masons' Int'l Ass'n, Local 262 Welfare Fund, Annuity Fund, Pension Fund, & Apprenticeship Training Funds v. Mimosa International*, No. 10-cv-2168, 2013 WL 1718913, at *7 (S.D.N.Y. Apr. 16, 2013). Utilizing an intermediate date of February 15, 2015, the midpoint of the audit period, as the accrual date, *see* N.Y. C.P.L.R. § 5001(b), the Court calculates a total of $5,252.10 in interest through March 31, 2016, the end of the audit period. Accordingly, the Court respectfully recommends that the Trustees be awarded $5,252.10 in interest.[4]

2. "Audit Interest"

Plaintiffs also seek an award of "audit interest" on unpaid contributions in the amount of $3,054.00. *See* Statement of Damages; Carney Aff. ¶ 7. Although the audit

---

[4] Plaintiffs do not seek additional pre- or post-judgment *per diem* interest. *See* Statement of Damages.

10

reports prepared by CR set forth "interest due" in connection with the unpaid contributions, they do not describe how such amounts are calculated, and the Trustees do not otherwise provide an adequate explanation in this regard. As explained above, Plaintiffs are, pursuant to ERISA, entitled to interest calculated at a rate of 6% accruing on the intermediate date of February 15, 2015. Absent an explanation regarding the nature of the additional "audit interest" sought, the Court deems the Trustees' request for these amounts duplicative and improper. *See Mimosa International*, 2013 WL 1718913, at *9 ("Under these circumstances, the ERISA-mandated interest award controls, and any different or additional 'audit interest' will not be awarded."). Accordingly, the Court respectfully recommends that Plaintiffs' application for $3,054.00 in "audit interest" be denied.

### C. Liquidated Damages

Next, Plaintiffs seek liquidated damages at a rate of 20% of the total unpaid contributions as provided in the CBA. *See* Alimenia Aff. ¶ 5; CBA at p. 17. This term of the CBA is in accord with the applicable provisions of ERISA. *See* 29 U.S.C. § 1132(g)(2)(C); *see also LaBarbera v. David Liepper & Sons, Inc.*, No. 06-cv-1371, 2006 WL 2423420, at *4 (E.D.N.Y. July 6, 2006) (applying similar liquidated damages terms). Accordingly, the Court respectfully recommends that Plaintiffs be awarded twenty percent of the $77,914.83 in unpaid contributions, or $15,582.96, as liquidated damages.

### D. Attorneys' Fees

Plaintiffs also seek an award of $2,600.00 for fees charged by the law firm of Barnes, Iaccarino, & Shepherd, LLP ("BIS") in connection with this matter. Section 502 of ERISA mandates an award of reasonable attorneys' fees in successful actions to recover delinquent contributions such as this case. 29 U.S.C. § 1132(g)(2)(D); *see LaBarbera*, 2006 WL 2423420, at *4.

The Second Circuit employs the lodestar method to calculate attorneys' fees. *See LaBarbera*, 2006 WL 2423420, at *4. "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citations and internal quotation marks omitted). The Second Circuit has further noted that the "lodestar figure should be in line with those rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citations, internal quotation marks, and brackets omitted). In general, "the prevailing community the district court should consider to determine the lodestar figure is the district in which the court sits[.]" *Id.* (citation and internal quotation marks omitted). "Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, 'the range of reasonable attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.'" *McMahon-Pitts*

12

*v. Sokoloff*, No. 15-cv-4975, 2017 WL 1011473, at *3 (E.D.N.Y. Mar. 15, 2017) (quoting *Siracuse v. Program for the Dev. of Human Potential*, 07-cv-2205, 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012)). "Ultimately, the Court should be guided by what a reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively would be willing to pay." *Gesualdi v. Tapia Trucking LLC*, No. 11-cv-4174, 2012 WL 7658194, at *3 (E.D.N.Y. Oct. 15, 2012) (citation and internal quotation marks omitted), *report and recommendation adopted*, No. 11-cv-4174, 2013 WL 831134 (E.D.N.Y. Mar. 6, 2013).

The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged. *See generally N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). A request for an award of attorneys' fees must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *See Cruz*, 34 F.3d at 1160-61. In making a fee determination, "district courts have broad discretion, using 'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and the rates charged in a given case.'" *AW Indus., Inc. v. Sleep Well Mattress, Inc.*, No. 07-cv-3969, 2009 WL 485186, at *5 (E.D.N.Y. Feb. 26, 2009) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992)).

Here, Plaintiffs seek reimbursement for services rendered by attorney Danielle M. Carney ("Carney"), initially at a flat rate of $500.00, and thereafter at a rate of

13

$200.00 per hour. *See* Carney Aff. ¶ 12. Plaintiffs' submissions adequately set forth the background and experience level of Carney, *see id.* ¶ 13 ("I have more than . . . 20 . . . years of experience prosecuting claims on behalf of various ERISA benefit funds."), and the Trustees support their request with contemporaneous time records setting forth the tasks Carney completed for this case and the number of hours expended on each task, *see* DE [11-4]. Having reviewed such materials, the Court finds both the number of hours spent by BIS on this matter, 10.5, and the hourly rate of $200.00 reasonable. *See Trustees of Laborers Union Local No. 1298 of Nassau & Suffolk Ctys. Benefit Funds v. Sitework Mgmt., Inc.*, No. 14-cv-3052, 2015 WL 1198665, at *17 (E.D.N.Y. Mar. 16, 2015) (recommending approval of Carney's rate of $200.00 per hour and finding that rate "to be on the low end for an attorney practicing for 17 years in this type of ERISA litigation"). However, Plaintiffs have provided no basis for their claim to a $500.00 flat fee billed by BIS in connection with preparing and sending an "Audit Demand Letter," which the Court finds excessive considering the nature of the task. *See Mimosa International*, 2013 WL 1718913, at *11 (denying application for reimbursement of a $500.00 flat fee charged for a demand letter sent by Carney); *see also Thomas v. City of New York*, No. 14-cv-7513, 2017 WL 6033532, at *8 (E.D.N.Y. Dec. 1, 2017) ("[C]ourts in this Circuit do not ordinarily award attorneys' fees on a flat-rate basis."). Accordingly, the Court respectfully recommends an award of $2,100.00 in attorneys' fees.

### E. Accounting Fee

Next, the Trustees seek to recover an "accounting fee" of $5,579.00. *See* Statement of Damages. "Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (quoting *King v. Unique Rigging Corp.*, No. 01-cv-3797, 2006 WL 3335011, *5 (E.D.N.Y. Oct. 27, 2006)). Here, Plaintiffs wholly fail to show how the amounts sought were calculated or otherwise describe the basis for this request. Accordingly, the Court respectfully recommends that the Trustees' application for reimbursement of an "accounting fee" be denied without prejudice and with leave to resubmit along with appropriate supporting documentation.

### F. Costs

Finally, Plaintiffs seek to recover $531.00 in costs, which includes:  (i) filing fees in the amount of $400.00; and (ii) a $131.00 process server fee. *See* Statement of Damages; Carney Aff. ¶ 7. ERISA provides for the recovery of costs associated with litigation, *see* 29 U.S.C. § 1132(g)(2)(D), and "[a] court will generally award 'those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee paying clients.'" *Finkel v. Jones Lang LaSalle Ams., Inc.*, No. 08-cv-2333, 2009 WL 5172869, at *6 (E.D.N.Y. Dec. 30, 2009) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). The Court finds the Trustees' request for costs related to filing fees and service of process to be reasonable

15

and adequately supported. *See* DEs [1], [11-3]. Accordingly, the Court recommends that Plaintiffs be awarded a total of $531.00 in costs.

### IV. CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that damages be awarded to the Trustees as follows:

| | |
|---|---:|
| Unpaid Contributions | $77,914.83 |
| Interest | $5,252.10 |
| Liquidated Damages | $15,582.96 |
| Attorneys' Fees | $2,100.00 |
| Costs                                       + | $531.00 |
| **Total** | **$101,380.89** |

The Court further recommends that Plaintiffs' request to recover an "accounting fee" be denied without prejudice and with leave to resubmit along with appropriate supporting documentation.

### V. OBJECTIONS

A copy of this Report and Recommendation is being sent to Plaintiffs by electronic filing. Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendant within five days and to file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:     Central Islip, New York     <u>s/ Steven I. Locke</u>
           January 17, 2019              STEVEN I. LOCKE
                                               United States Magistrate Judge